IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

                 Plaintiff,

v.                                  CRIMINAL ACTION NO. 2:14-cr-00236

MARLON DEWAYNE DIXON,

                 Defendant.

MEMORANDUM OPINION AND ORDER

Before the Court is the determination of whether there is a factual basis for Defendant's plea. For the reasons discussed herein, the Court **FINDS** that there is a factual basis for the plea.

### I.   Background

This case arises out of Defendant's killing of Branda Mae Delight Basham—an informant for the Metropolitan Drug Enforcement Network Team ("MDENT"). The pertinent facts are as follows.

### A.    The Relevant Policies and Procedures of Local and Federal Authorities

"MDENT . . . is a multi-jurisdictional task force with a primary mission of enforcing . . . state and federal drug laws." (ECF No. 63, Ex. A ¶ 12.) MDENT "is comprised of personnel from police departments, sheriff's departments, and federal agencies." (*Id.*) "A significant number of MDENT cases are prosecuted in the United States District Court for the Southern District of West Virginia through" the United States Attorney's Office (the "USAO"). (*Id.* ¶ 13.) "MDENT works

1

closely with the USAO nearly every day in order to focus its resources on cases that meet federal initiatives and prosecution guidelines." (*Id.*) "Any case falling within a federal initiative or meeting USAO guidelines is presented by the relevant case agent to" an Assistant United States Attorney ("AUSA") "for federal prosecution." (*Id.*)

"In August 2013, the Department of Justice announced the 'Smart on Crime' initiative." (*Id.* ¶ 20.) "This initiative directed U.S. Attorney Offices to focus resources on the most significant cases . . . includ[ing] violent and recidivist or career offenders . . . ." (*Id.*)

"Over the past several years, in response to the epidemic of opioid abuse, the USAO, MDENT," and other federal and local agencies in this District "have collaborated and focused collective resources on cases involving opioid pharmaceuticals and heroin." (*Id.* ¶ 21.) "In May 2014, USAO prosecution guidelines prioritized opioid pharmaceutical and heroin cases to the near exclusion of cases involving other types of controlled substances . . . ." (*Id.*)

"In 2013, the USAO along with local officials and community leaders launched the 'West Side Drug Market Initiative' . . . ." (*Id.* ¶ 19.) As part of this initiative, "cases from the West Side of Charleston involving middle and high-level drug dealers and those with significant or violent criminal records would be prosecuted federally." (*Id.*) "Federal and local law enforcement (including MDENT) received training on the criteria to be used in identifying cases that would be adopted for federal prosecution . . . ." (*Id.*)

Additionally, "[s]tarting in 2013, MDENT along with federal agencies and city police joined the USAO in targeting certain types of drug crimes occurring on the West Side of Charleston." (*Id.* ¶ 14.) "As a result, MDENT submits nearly all West Side cases to the USAO that involve heroin and opioid pharmaceuticals, along with any other drug cases . . . that were

2

perpetrated by individuals having significant criminal records." (*Id.*) "This practice was in full effect during May 2014 . . . ." (*Id.*)

"Any case referred to the USAO for prosecution is reviewed by an [AUSA]." (*Id.* ¶ 15.) "Cases prosecuted by the USAO necessarily involve communication between witnesses and the AUSA handling the prosecution." (*Id.*) "This communication includes interviews of the witnesses, preparation for and testimony before a federal grand jury, as well as preparation for and testimony before a federal judge . . . ." (*Id.*) "Cases brought by the USAO are ultimately brought before a federal judge, with witness testimony presented during a trial, and if a conviction is obtained, at sentencing . . . ."[1] (*Id.* ¶ 16.)

## B.    Defendant's Prior Convictions

Defendant has three pertinent prior convictions. First, on July 19, 1999, a court in this District sentenced Defendant to 63 months of imprisonment and five years of supervised release for possession with intent to distribute cocaine base. (PSR ¶ 76.) Second, on April 11, 2006, a court in this District sentenced Defendant to 41 months of imprisonment and six years of supervised release for possession with intent to distribute cocaine. (*Id.* ¶ 80.) Finally, on March 23, 2007, Defendant was sentenced in Kanawha County Circuit Court to two to ten years of imprisonment—to run concurrently with Defendant's April 11, 2006 federal sentence—for the offense of malicious wounding. (*Id.* ¶ 79.)

## C.    The May 2014 Controlled Buys and Investigation

---

[1] The Court is mildly troubled by the categorical nature of this statement in the parties' Amended Stipulation. Of course, few federal cases actually proceed to trial. They are far more often resolved by guilty pleas. This is especially true of drug cases.

3

"On May 8, 16, and 20, 2014, [Defendant] distributed heroin to [Basham] who was working as an informant for [MDENT]." (ECF No. 63, Ex. A ¶ 1.) "The transactions were conducted under the supervision of MDENT and occurred on the West Side of Charleston, . . . West Virginia . . . ." (*Id.*)

On May 19, 2014, Basham identified Defendant as the seller. (*Id.* ¶ 17.) "At that point, MDENT began preparing to present the case to the [USAO] for federal prosecution based on the detectives' knowledge of USAO prosecution guidelines and priorities." (*Id.*) In particular, MDENT detectives knew the case included the following "factors prioritized by the USAO when considering whether to adopt drug cases for" federal prosecution: (1) Defendant's "past federal convictions and criminal record;" (2) "the location of the controlled transactions" on the West Side of Charleston, West Virginia; and (3) "the fact that the case involved heroin." (*Id.*) "As a result . . . , MDENT detectives determined to present the case to the United States Attorney's Office for federal prosecution." (*Id.*) "Had [Defendant] not [killed] Basham, MDENT officers would have continued to communicate with Basham and relay those communications to the AUSA . . . ." (*Id.*) Additionally, once the case was adopted for federal prosecution, "Basham would have communicated with the USAO and an AUSA." (*Id.* ¶ 23.)

**D.     The Instant Offense and Prosecution**

On May 21, 2014, MDENT executed a search warrant at Defendant's residence. (*Id.* ¶ 2.) When Defendant returned to his residence "and observed the service copy of the warrant," Defendant "suspected that Basham had been working for police" during her recent heroin purchases. (*Id.*) On May 22, 2014, Defendant spoke with an MDENT detective, learned "that MDENT had made controlled purchases of heroin from him," (*id.* ¶ 3), and, "when the detective

told him that, [Defendant] knew he 'was gonna kill,'" (PSR ¶ 44). Defendant told the detective "that he would surrender to police after the Memorial Day holiday weekend," but Defendant "did not surrender until July 17, 2014." (ECF No. 63, Ex. A ¶ 3.)

"Sometime after midnight on July 12, 2014, [Defendant] convinced Basham to meet him in a secluded stretch of railroad tracks . . . on the West Side of Charleston, . . . West Virginia." (*Id.* ¶ 4.) Defendant provided a statement to Charleston Police Department detectives in which he said that he requested the meeting to confront Basham about being a confidential informant. (PSR ¶ 46. *See generally id.* ¶ 16 n.1 (stating that Defendant provided "a Mirandized statement to a detective after [his] arrest on July 17, 2014").) Defendant noted that, at the meeting, Basham admitted to "wearing a wire" and that she made controlled buys from Defendant. (*Id.* ¶ 46.) Defendant stated that "as soon as [Basham] mentioned an MDENT detective's name that he knew . . . Basham was responsible for 'setting him up,' and [Defendant] knew he was going to kill her." (*Id.*) Defendant stated that he then displayed a firearm and "Basham pled for her life." (*Id.* ¶ 47.) According to Defendant, Basham "attempted to flee and he shot her in the back." (*Id.*) Defendant stated that Basham then "fell to the ground and asked [Defendant] to call an ambulance" and again "pleaded with [Defendant] for her life." (*Id.*) Defendant "admitted to shooting . . . Basham two more times, the last of which was at close range and in the face." (*Id.*; *cf. id.* ¶ 21 (providing that a resident in the area of the killing gave a statement to officers that they heard a woman scream "Please, no, no!" and "then heard a firearm discharge and heard a second discharge from a firearm minutes later"); *id.* ("Two other witnesses told officers they heard three to four gunshots . . . near the scene where the body had been discovered.").)

"On July 14, 2014, an autopsy and examination was completed on . . . Basham." (*Id.* ¶ 33.) "The examination revealed that . . . Basham had sustained gunshot wounds to the right cheek, the left chest, and the right anteroinferior chest." (*Id.*) "The cause of death was determined to be homicide." (*Id.*)

The parties stipulated to the following regarding Defendant's intent in killing Basham:

[Defendant] carried out the murder with the intent both to retaliate against Basham for her cooperation with police and to prevent her from providing additional evidence or testimony against him related to the drug trafficking investigation;

Specifically, [Defendant] carried out the murder of Basham with the intent to prevent Basham from communicating with federal law enforcement or a judge of the United States regarding [Defendant's] commission of federal drug trafficking offenses, that is, his distribution of heroin in violation of 21 U.S.C. § 841(a)(1) in May 2014 . . . .

(ECF No. 63, Ex. A ¶¶ 7–8.)

On October 28, 2014, a federal grand jury in this District returned a seven-count Indictment against Defendant. (ECF No. 10.) The Indictment included a notice of special findings pursuant to 18 U.S.C. §§ 3591 and 3592.[2]  (*Id.* at 8–9.) On November 9, 2015, Defendant appeared before this Court and pled guilty to Count Four of the Indictment. (ECF No. 51; *see also* ECF No. 50 (plea agreement).) Count Four provides the following:

On or about July 12, 2014, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia, [Defendant], . . . with malice aforethought, did unlawfully, willfully, deliberately, maliciously, and with premeditation kill Branda Mae Delight Basham with the intent to prevent the communication by Ms. Basham to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a Federal offense.

---

[2] Section 3591 provides, in pertinent part, that "[a] defendant who has been found guilty of . . . any . . . offense for which a sentence of death is provided, if the defendant . . . intentionally killed the victim . . . shall be sentenced to death." 18 U.S.C. § 3591(a). Section 3592, in turn, addresses "[m]itigating and aggravating factors to be considered in determining whether a sentence of death is justified."

6

In violation of Title 18, United States Code, Sections 1512(a)(1)(C) and 1512(a)(3)(A).

(ECF No. 10 at 4.)

On March 7, 2016, the Court directed the parties to file briefing regarding the factual basis for Defendant's plea. (ECF No. 54.) On March 11, 2016, the parties filed their Joint Submission in Response to Court-Ordered Briefing. (ECF No. 55.) Subsequently, on March 22, 2016, the Court held a telephonic conference regarding the factual basis for Defendant's plea and directed the parties to file additional briefing on this topic. (ECF No. 58; *see also* ECF No. 59 (providing the Court's March 30, 2016 order following the telephonic conference in which the Court directed the "parties to file memoranda, either separately or jointly, regarding the factual basis for Defendant's plea").) On May 2, 2016, the parties filed their Joint Memorandum of Law in Support of the Defendant's Plea Agreement. (ECF No. 63.) The parties also attached a signed and initialed Amended Stipulation of Facts to this joint memorandum. (*See id.*, Ex. A.) As such, the issue of whether there is a factual basis for Defendant's plea is fully briefed and ready for disposition.

## II. Legal Standard

"A voluntary and intelligent plea of guilty is an admission of all the elements of a formal criminal charge and constitutes an admission of all material facts alleged in the charge." *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993) (citations omitted). Nonetheless, Federal Rule of Criminal Procedure 11 provides that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[T]he Rule ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (citing *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985), *cert.*

*denied*, 475 U.S. 1029 (1986)). "The requirement to find a factual basis is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (quoting Fed. R. Crim. P. 11 advisory committee's notes (1966)).

"In determining whether a guilty plea has a factual basis, the district court need not rely only on the Rule 11 plea colloquy." *Id.* Rather, the court "may conclude that a factual basis exists from *anything* that appears on the record." *Id.* (emphasis added) (quoting *DeFusco*, 949 F.2d at 120). This Court regularly relies upon undisputed facts and inferences arising therefrom taken from stipulations of fact, direct inquiry to defendants during Rule 11 hearings, and information in presentence reports to which no objection is made in assessing the factual basis for pleas. This list is by no means exhaustive, as the factual basis may be found from anything in the record. *Id.*

"[T]he district court . . . 'need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense.'" *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997)). However, defendants do not have an "absolute right to have a guilty plea accepted," and the "court may reject a plea in exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "The trial court has wide discretion in determining whether a factual basis exists." *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990) (citing *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988)).

### III. Discussion

8

Defendant pled guilty to Count Four of a seven-count Indictment, (*see, e.g.*, ECF No. 50 ¶ 2), which charges him with witness tampering by killing in violation of 18 U.S.C. §§ 1512(a)(1)(C) and 1512(a)(3)(A), (ECF No. 10 at 4). The former statutory provision provides the substantive offense to which Defendant pled guilty, *see* 18 U.S.C. § 1512(a)(1)(C), while the latter provides a cross-reference to the pertinent punishment provision, *see id.* § 1512(a)(3)(A). The Court shall address, in turn, the factual basis for Defendant's plea to the substantive offense and the punishment provision.

## A.     Witness Tampering By Killing Under 18 U.S.C. § 1512(a)(1)(C)

Count Four of the Indictment states, in relevant part, that Defendant "kill[ed] Branda Mae Delight Basham with the intent to prevent the communication by Ms. Basham to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a Federal offense" in violation of 18 U.S.C. § 1512(a)(1)(C). (ECF No. 10 at 4.) Section 1512(a)(1)(C) provides the following, in pertinent part:

> Whoever kills . . . another person, with intent to . . . prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . shall be punished as provided in paragraph (3).

The Government must prove the following elements to convict Defendant of this offense: "(1) a killing  .  .  . , (2) committed with a particular intent, namely, an intent (a) to 'prevent' a 'communication' (b) about 'the commission or possible commission of a Federal offense' (c) to a federal 'law enforcement officer or judge.'" *Fowler v. United States*, 563 U.S. 668, 672 (2011). *See generally United States v. Ramos-Cruz*, 667 F.3d 487, 498 (4th Cir. 2012) ("[P]rosecution under § 1512(a)(1)(C) reaches killings that occur before the victim has had any communication with law enforcement officers." (citing *Fowler*, 563 U.S. at 672–73)); *id.* at 498 ("[T]he

9

government need not prove that a federal investigation was in progress at the time the defendant committed witness-tampering murder." (citations omitted)).

The first three requirements are clearly established in this case. Defendant has repeatedly admitted that he killed Basham. (*See, e.g.*, ECF No. 55 at 2; ECF No. 63, Ex. A ¶¶ 4–8.) Additionally, Defendant stated that he "carried out the murder with the intent both to retaliate against Basham for her cooperation with police and *to prevent her from providing additional evidence or testimony against him* related to the drug trafficking investigation."[3] (ECF No. 63, Ex. A ¶ 7 (emphasis added); *see also* ECF No. 55 at 2 (providing the parties' joint statement that they "agree that the communications [Defendant] sought to prevent were those between Basham and task force officers . . . relative to [Defendant's] drug trafficking activities"); *id.* at 4 (providing the parties' joint statement that "it is clear that [Defendant's] motive for killing was to eliminate a witness that would likely provide communications for use in a federal investigation"); ECF No. 63 at 5 (providing the parties' joint statement that Defendant killed "Basham to prevent her from communicating with . . . MDENT . . . , the United States Attorney's Office and an Assistant United States Attorney, and ultimately a federal judge").) Finally, Defendant acknowledged that he

---

[3] The Court notes that the record indicates that Defendant had a dual intent in killing Basham—both to retaliate against Basham for her past communications to law enforcement officers *and* to prevent future communications. (ECF No. 63, Ex. A ¶ 7.) Nonetheless, the Court finds that, so long as Defendant held the requisite intent to prevent future communications with law enforcement officers under Section 1512(a)(1)(C), it is immaterial that he also held the intent to retaliate against the victim for her past communications. *See, e.g.*, *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2014) ("It is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary purpose."); *see also Anderson v. United States*, 417 U.S. 211, 226 (1974) ("A single conspiracy may have several purposes, but if one of them—whether primary or secondary—be the violation of a federal law, the conspiracy is unlawful under federal law."); *Spies v. United States*, 317 U.S. 492, 499 (1943) ("If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime."). The Court also notes that courts have upheld convictions under Section 1512(a)(1)(C) where the defendant similarly killed a witness with the intent both to prevent future communications and retaliate for past communications. *See, e.g.*, *United States v. Burgos-Montes*, 786 F.3d 92, 112 (1st Cir. 2015) (finding that there was sufficient evidence to lead reasonable jurors to conclude that the defendant committed offenses under both Sections 1512(a)(1)(C) (witness tampering by killing) and 1513(a)(1)(B) (retaliation for past communications)).

murdered Basham to prevent communications specifically "regarding [his] commission of federal drug trafficking offenses, that is, his distribution of heroin in violation of 21 U.S.C. § 841(a)(1) in May 2014." (ECF No. 63, Ex. A ¶ 8.) The Court finds that these facts and statements satisfy the first three requirements of this offense—namely, a killing committed with the intent to prevent a communication[4] about the commission or possible commission of a Federal offense.

The final requirement of a Section 1512(a)(1)(C) offense—a killing committed with the intent to "prevent the communication by any person to a law enforcement officer or judge of the United States"—is the subject of developing case law and requires further discussion. For purposes of this federal-nexus requirement, the term "law enforcement officer" is defined, in pertinent part, as "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant," who is "authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense." 18 U.S.C. § 1515(a)(4).

In *Fowler v. United States*, the Supreme Court noted that "[w]hen a defendant has in mind a particular individual or a particular set of individuals with whom he fears the victim might communicate, the application of [Section 1512(a)(1)(C)] is relatively clear." 563 U.S. at 672. "For instance, if a defendant kills a victim with the intent of preventing the victim from communicating with a particular individual . . . who the defendant knows is a federal law enforcement officer, the statute fits like a glove." *Id.* Similarly, "[i]f a defendant kills a victim with the intent of preventing

---

[4] The stipulations say that Defendant killed Basham "to prevent her from providing additional evidence or testimony against him related to the drug trafficking investigation." (ECF No. 63, Ex. A ¶ 7; ECF No. 50, Ex. A ¶ 7.) However, the parties also agree that he did so to "prevent Basham from communicating with" law enforcement. (*Id.* ¶ 8.) Of course, what is required is the intent to prevent a "relevant communication." *Fowler v. United States*, 563 U.S. 668, 670 (2011). At a hearing held on this date, Defendant confirmed that it was his intent to prevent communication generally, not just testimony or evidence, and not necessarily information in addition to that already provided.

the victim from communicating with [an individual], who is in fact (but who the defendant does not know is) a federal law enforcement officer, the statute still fits." *Id. See generally* 18 U.S.C. § 1512(g) (stating that "no state of mind need be proved with respect to the circumstance . . . that the judge is a judge of the United States or that the law enforcement officer is" a "law enforcement officer," as that term is defined for purposes of Section 1512(a)(1)(C)).

However, these "relatively clear" applications of the federal-nexus requirement of Section 1512(a)(1)(C) may not be implicated in the instant case.[5] The parties acknowledge that "no specific agent gave cause for the killing" and, instead, Defendant "killed Basham for the purpose of preventing her communications with law enforcement generally." (ECF No. 55 at 2.) The Court therefore turns to the third potential scenario addressed by the Supreme Court in *Fowler* that may satisfy this requirement.

In *Fowler*, the Supreme Court noted that "[n]othing in the statutory language" of Section 1512(a)(1)(C) "limits it to the[] kinds of instances . . . in which the defendant has some law

---

[5] In their most recent briefing, the parties assert that Defendant "murdered Basham to prevent her from communicating with . . . the [USAO] and an [AUSA], and ultimately a federal judge in the Charleston Division of the United States District Court for the Southern District of West Virginia." (ECF No. 63 at 5.) This assertion establishes that Defendant had in mind a particular set of federal law enforcement officers or judges—namely, the USAO and the federal judges in this Charleston Division of this District. (*See id.*) As such—in addition to the Court's finding regarding law enforcement officers generally, as provided herein—the Court alternatively finds that the federal-nexus requirement of Section 1512(a)(1)(C) is satisfied based on a theory that Defendant had in mind a particular set of federal law enforcement officers or judges when he killed Basham. *See Fowler v. United States*, 563 U.S. 668, 672 (2011) ("When a defendant has in mind a particular individual or a particular set of individuals with whom he fears the victim might communicate, the application of the statute is relatively clear. For instance, if a defendant kills a victim with the intent of preventing the victim from communicating with a particular individual . . . who the defendant knows is a federal law enforcement officer, the statute fits like a glove.").

However, the parties previously provided the contradictory assertion that Defendant did not have in mind a particular group of law enforcement officers or judges when he committed the murder and, instead, that he "killed Basham for the purpose of preventing her communications with law enforcement in general rather than to some specific law enforcement officer or set of officers which the defendant has in mind." (ECF No. 55 at 2.) Given these contradictory assertions, the Court shall err on the side of caution and also analyze the federal-nexus requirement of Section 1512(a)(1)(C) under the third scenario addressed by the *Fowler* Court—*i.e.*, a killing with the intent to prevent communications with "law enforcement officers in general rather than to some specific law enforcement officer or set of officers which the defendant has in mind." *Fowler v. United States*, 563 U.S. 668, 672 (2011) (emphasis omitted). For the reasons provided herein, the Court alternatively finds that the federal-nexus requirement of Section 1512(a)(1)(C) is similarly satisfied under this third *Fowler* scenario.

enforcement officer or set of officers, or other identifiable individuals, particularly in mind." 563 U.S. at 672–73. Indeed, "[w]itness tampering may prove more serious (and more effective) when the crime takes place before the victim has engaged in any communication at all with law enforcement officers—at a time when the precise communication and nature of the officer who may receive it are not yet known." *Id.* at 673 (citation omitted). "Hence [Section 1512(a)(1)(C)] covers a defendant who kills with intent to prevent communication with law enforcement officers generally (*i.e.*, with any and all law enforcement officers)." *Id.*

However, "in these circumstances, the application of the statute is not as simple," as courts "cannot determine whether the individual the defendant had in mind is in fact a federal officer, because the defendant did not have a particular individual in mind." *Id.* The *Fowler* Court noted that Section 1512(a)(1)(C) must require more than "the Government . . . show[ing] . . . the broad indefinite intent . . . to prevent communications to law enforcement officers in general" because such a minimal showing "would bring within the scope of this statute many instances of witness tampering in purely state investigations and proceedings, thus extending the scope of this federal statute well beyond the primarily federal area that Congress had in mind." *Id.* at 675. The Supreme Court therefore provided the following additional requirement where the defendant only had in mind law enforcement officers generally:

> [I]n a case . . . where the defendant does not have particular federal law enforcement officers in mind . . . the Government must show *a reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer. That is to say, where the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer.

13

*Id.* at 677–78. Under this requirement, "[t]he Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not." *Id.* at 678. "But the Government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Id.*; *see also Ramos-Cruz*, 667 F.3d at 495 ("The showing must demonstrate more than a mere possibility that the victim would have communicated with federal law enforcement officers, principally because . . . 'where a federal crime is at issue, communication with federal law enforcement officers is almost always a *possibility*.'" (quoting *Fowler*, 563 U.S. at 676)).

"*Fowler* 'le[ft] it to the lower courts to determine whether, and how, the [reasonable likelihood] standard applies' to the conduct at issue . . . ." *United States v. Veliz*, 800 F.3d 63, 74 (2d Cir. 2015) (quoting *Fowler*, 563 U.S. at 678). Following the *Fowler* decision, the Fourth Circuit held "that the federal nexus element of § 1512(a)(1)(C)"—*i.e.*, the "reasonable likelihood" standard—"'may be inferred by the jury from the fact that the offense was federal in nature, plus additional appropriate evidence.'" *Ramos-Cruz*, 667 F.3d at 497 (quoting *United States v. Bell*, 113 F.3d 1345, 1349 (3d Cir. 1997)); *see also Veliz*, 800 F.3d at 74–75 (concluding post-*Fowler* "that the 'federal offense' plus 'additional appropriate evidence' framework remains valid in light of *Fowler*"); *cf. United States v. Tyler*, 732 F.3d 241, 252 (3d Cir. 2013) (omitting any reference to the "additional appropriate evidence" framework when describing the post-*Fowler* requirements for a Section 1512(a)(1)(C) conviction). The Fourth Circuit did not elaborate on what evidence satisfies this "additional appropriate evidence" standard.[6] *See Ramos-Cruz*, 667 F.3d at 497; *cf.*

---

[6] The Court notes that it is not clear whether the "reasonable likelihood" standard is only satisfied if it was reasonably likely that the victim would have communicated *directly* with a federal law enforcement officer or judge, *see, e.g.*, *Fowler v. United States*, 563 U.S. 668, 677–78 (2011) (noting that this standard is satisfied "if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications *would have*

*Veliz*, 800 F.3d at 74 (noting that the Second Circuit "declined to comprehensively define 'additional appropriate evidence' because it 'by its nature will require careful, case-by-case analysis,'" but "provid[ing] as examples of such evidence 'proof that there was a federal investigation in progress at the time' of the witness tampering, or 'that the defendant had actual knowledge of the federal nature of the offense'" (quoting *United States v. Lopez*, 372 F.3d 86, 91 (2d Cir. 2004))).

In this case, Defendant has stipulated that the pertinent federal offense for purposes of this standard is Defendant's "commission of federal drug trafficking offenses, that is, his distribution of heroin in violation of 21 U.S.C. § 841(a)(1) in May 2014." (ECF No. 63, Ex. A ¶ 8; *see also id.* ¶ 1 (providing the statement in the Amended Stipulation of Facts that, "[o]n May 8, 16, and 20, 2014, [Defendant] distributed heroin to Branda Mae Delight Basham . . . who was working as an informant").) Additionally, the parties have supplemented the record with additional appropriate evidence to satisfy the reasonable likelihood standard. *Cf. United States v. Smith*, 723 F.3d 510, 518 (4th Cir. 2013) ("To be sure, the presence of drug trafficking alone might not be enough to

---

*been made to a federal officer*" (emphasis added)), or if this standard is also satisfied by a reasonable likelihood of *indirect* communications, *see United States v. Smith*, 723 F.3d 510, 518 (4th Cir. 2013) ("[T]he government did put forth 'additional appropriate evidence' showing the reasonable likelihood that [the victim's] reports would have been *brought to the attention* of federal law enforcement officers." (emphasis added)). *Smith* appears to be the only case to even suggest that indirect communications might suffice and it does not explicitly so hold.

As discussed below, the record in this case includes sufficient additional appropriate evidence creating a reasonable likelihood that, but for the killing, Basham would have communicated directly with a federal law enforcement officer. The Court therefore need not necessarily reach this potential direct-versus-indirect communication issue.

Nonetheless, to the extent that indirect communications satisfy the "reasonable likelihood" standard, the Court finds that such communications are present in the instant case. In particular, the parties stipulated that, "[h]ad [Defendant] not murdered Basham, MDENT officers would have continued to communicate directly with Basham and relay those communications to the AUSA." (ECF No. 63, Ex. 1 ¶ 17.) The Court finds that this evidence is sufficient to satisfy the "reasonable likelihood" standard to the extent this standard may be satisfied by indirect communications. As such, in addition to the direct-communication discussion provided herein, the Court alternatively finds that the "reasonable likelihood" standard is satisfied—insofar as indirect communications may satisfy this standard—by evidence that, absent the murder, MDENT would have conveyed at least one of Basham's relevant future communications to an AUSA.

15

satisfy the 'reasonable likelihood' standard, but the federal nature of drug trafficking, plus 'additional appropriate evidence' does meet the standard." (quoting *Bell*, 113 F.3d at 1349)). In particular, the record includes the following pertinent additional evidence relating to the practices of MDENT and the USAO at the time of the murder: (1) "[i]n August 2013, the Department of Justice announced the 'Smart on Crime' initiative," which "directed U.S. Attorney Offices to focus resources on the most significant cases to include violence and recidivist or career offenders," (ECF No. 63, Ex. A ¶ 20); (2) "[i]n May 2014, USAO prosecution guidelines prioritized opioid pharmaceutical and heroin cases to the near exclusion of cases involving other types of controlled substances," (*id.* ¶ 21); (3) "[i]n 2013, the USAO along with local officials and community leaders launched the 'West Side Drug Market Initiative,'" and, as part of this initiative, "cases from the West Side of Charleston involving middle and high-level drug dealers and those with significant or violent criminal records would be prosecuted federally," (*Id.* ¶ 19); (4) "[s]tarting in 2013, . . . . MDENT submits nearly all West Side cases to the USAO that involve heroin and opioid pharmaceuticals, along with any other drug cases . . . that were perpetrated by individuals having significant criminal records," (*id.* ¶ 14); (5) "[a] significant number of MDENT cases are prosecuted" by the USAO and "MDENT works closely with the USAO nearly every day in order to focus its resources on cases that meet federal initiatives and prosecution guidelines," (*id.* ¶ 13); and (6) "[c]ases prosecuted by the USAO necessarily involve communication between witnesses and the AUSA handling the prosecution," including "interviews of the witnesses, preparation for and testimony before a federal grand jury, as well as preparation for and testimony before a federal judge," (*id.* ¶ 15). In addition, the record includes the following relevant additional evidence specifically relating to this case: (1) Defendant was previously convicted of possession with intent

to distribute offenses in 1999 and 2006, as well as malicious wounding in West Virginia state court in 2007, (*id.* ¶ 24); (2) following Basham identifying Defendant to MDENT officers on May 19, 2014, "MDENT detectives determined to present the case to the [USAO] for federal prosecution" and "MDENT began preparing to present the case to the . . . USAO . . . for federal prosecution," (*id.* ¶ 17); (3) MDENT detectives made this determination because they "knew that [Defendant's] past federal convictions and criminal record, the location of the controlled transactions" on the West Side of Charleston, "and the fact that the case involved heroin were all factors prioritized by the USAO when considering whether to adopt drug cases for federal prosecution," (*id.*); (4) "[o]nce adopted, Basham would have communicated with the USAO and an AUSA,"[7] (*id.* ¶ 23); and (5) a federal investigation into Defendant's drug trafficking activities did, in fact, commence following Defendant's killing of Basham,[8] (*see, e.g.*, ECF No. 10 at 1–3 (providing the Indictment,

---

[7] At a hearing conducted on this date, the AUSA prosecuting this case represented, as an officer of the Court, that it is reasonably likely that—had Basham not been killed—he or another AUSA would have interviewed Basham in connection with the federal drug investigation of Defendant, *e.g.*, in preparation for grand jury testimony.

[8] The parties argue that the "reasonable likelihood" standard is satisfied, in part, based on Defendant's subjective "belie[f] at the time he murdered Basham that his sales of heroin to Basham would be prosecuted federally," "that Basham would . . . communicate with . . . an Assistant United States Attorney," and "once he learned that MDENT had made 'wire buys' from him that he was 'dead to the feds.'" (ECF No. 63 at 5–6.) The parties' reliance on subjective evidence finds support from at least one decision of a court of appeals following the Supreme Court's decision in *Fowler*. *See United States v. Veliz*, 800 F.3d 63, 74 (2d Cir. 2015) (concluding "that the 'federal offense' plus 'additional appropriate evidence' framework remains valid in light of *Fowler*" and noting that, prior to *Fowler*, the Second Circuit "provided as examples of such evidence 'proof that there was a federal investigation in progress at the time' of the witness tampering, or '*that the defendant had actual knowledge of the federal nature of the offense*'" (emphasis added) (quoting *United States v. Lopez*, 372 F.3d 86, 92 (2d Cir. 2004))).

Nonetheless, the Court finds that, at best, it is not clear whether subjective evidence of a defendant's knowledge or beliefs regarding the federal nature of an offense or a victim's future communications is valid additional appropriate evidence for purposes of the reasonable likelihood standard for two reasons. First, the Supreme Court's statement of the reasonable likelihood standard is, on its face, an objective analysis. *See Fowler v. United States*, 563 U.S. 668, 677 (2011) ("[I]n a case . . . where the defendant does not have particular federal law enforcement officers in mind . . . the Government must show a *reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer."). Relying on a defendant's subjective beliefs regarding the federal nature of an offense or a victim's communications could result in an inapposite result under this standard. In particular, if courts relied on the subjective beliefs of a defendant, they may find that there was the requisite reasonable likelihood of a federal communication—even if there was *no* likelihood whatsoever that a communication would be made to a federal law enforcement officer or judge—if the defendant errantly believed that a purely state offense was federal in nature, or that the victim would communicate with federal authorities. The Court finds that this potential for errant reasonable

which includes three counts alleging that Defendant distributed quantities of heroin in violation of 21 U.S.C. § 841(a)(1))).

The Court finds that the congruence of the practices and policies of MDENT and the USAO at the time of the killing, the close interaction between MDENT and the USAO at the time of Defendant's drug trafficking activities in May 2014, Defendant's prior convictions for drug-related and violent offenses, and the subsequent commencement of a federal investigation into Defendant's drug trafficking activities cumulatively create a strong likelihood that, even absent the killing, the USAO would have pursued Defendant's drug trafficking case for federal prosecution. The Court further finds that the Government's statements that an AUSA interviews witnesses following the adoption of cases and that it is reasonably likely that Basham would have been interviewed by an AUSA indicate, as the parties assert, that (absent the killing) there is a strong likelihood that Basham would have provided at least one relevant communication directly to an AUSA—*i.e.*, a "federal law enforcement officer," as that term is used in Section 1512(a)(1)(C). *See* 18 U.S.C. § 1515(a)(4)(A) (providing that "the term 'law enforcement officer' means," in pertinent part, "an officer or employee of the Federal Government . . . authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an

---

likelihood findings counsels in favor of utilizing only objective evidence or information when making this determination.

     Second, prior to *Fowler*, the Fourth Circuit found unpersuasive the Third Circuit's "mistaken belief that the government was required to prove a subjective belief by the defendant that 'the [victim] might communicate with the federal authorities.'" *United States v. Harris*, 498 F.3d 278, 290 (4th Cir. 2007) (quoting *United States v. Stansfield*, 101 F.3d 909, 918 (3d Cir. 1996)), *abrogated by Fowler*, 563 U.S. 668. Subsequent to *Fowler*, the Fourth Circuit noted that "*Harris* is no longer controlling" because "the test [the court] articulated in *Harris* is analogous to that overturned in *Fowler*." *United States v. Ramos-Cruz*, 667 F.3d 487, 495 (4th Cir. 2012). Nonetheless, as *Fowler* did not address whether subjective evidence may be used to make a reasonable likelihood finding, the *Harris* court's rejection of such evidence may have survived *Fowler*. In that case, subjective evidence would not be valid additional appropriate evidence in this Circuit.

     For these reasons, the Court declines to consider subjective evidence of Defendant's beliefs or knowledge regarding the federal nature of his offense or the victim's potential communications when conducting the reasonable likelihood analysis.

offense"); *see also Lauria v. United States*, Nos. 396cr185 (PCD), 301cv1893 (PCD), 301cv1894 (PCD), 2006 WL 3704282, at *23 n.17 (D. Conn. Dec. 13, 2006) (noting that the court "informed the jury" in the jury instructions that a particular AUSA was "a law enforcement officer" under the definition provided in 18 U.S.C. § 1515). The Court therefore finds that, even if Defendant only had in mind law enforcement officers generally when he killed Basham, there is nonetheless a reasonable likelihood that, absent the killing, Basham would have provided at least one relevant communication to a federal law enforcement officer. *See, e.g.*, *Smith*, 723 F.3d at 518 (finding that the government provided sufficient additional appropriate evidence where a Drug Enforcement Administration special agent "testified that the DEA field office's 'biggest source of information' was the Baltimore City Police Department," "the DEA worked in close cooperation with the Baltimore City Police Department, [including] its participation in six of nine task forces," there was testimony "that even street level drug cases come to the attention of the DEA," and the "case . . . involved gang activity, elevating the profile of the drug trafficking"); *United States v. Ramos-Cruz*, 667 F.3d 487, 498–99 (4th Cir. 2012) (stating that "the reasonable likelihood standard is met" where "federal law enforcement authorities become involved in an investigation approximately a month after the relevant murder, federal authorities are specifically focusing on the group in question, and local authorities investigating the underlying crime are actively cooperating with federal law enforcement officers"); *Goodman v. United States*, Civil Action No. RDB–12–2972, Criminal Action No. RDB–08–0056, 2015 WL 5735364, at *5 (D. Md. Sept. 28, 2015) (finding that there was "substantial" evidence satisfying the "reasonable likelihood" standard where "the evidence at trial indicated possession of a firearm by a prohibited person," "prior acts of obstruction of justice, firearm violations, and drug trafficking," and the case

"involved extensive drug activity, the type of which is addressed jointly by the Drug Enforcement Administration with the Baltimore City Police Department"); *United States v. Tyler*, 35 F. Supp. 3d 650, 655–56 (M.D. Pa. 2014) (finding that "a reasonable juror could conclude that there was a reasonable likelihood that [the victim] would have made at least one communication to a federal law enforcement officer" where, in pertinent part, (1) the head of the state task force—who had interviewed the victim—was a "law enforcement officer" due to his role as an "adviser and consultant with the" Drug Enforcement Administration; (2) this head of the state task force provided testimony that he reviewed cases to determine whether federal involvement was required and, at the time of the murder, he intended to refer the victim to the Drug Enforcement Administration "for use as a witness;" and (3) a Drug Enforcement Administration agent testified that a hypothetical witness who could provide the victim's testimony "would absolutely be a federal witness"); *United States v. Webb*, No. 11–40078–01–JAR, 2013 WL 5966135, at *1 (D. Kan. Nov. 8, 2013) (finding that the "reasonable likelihood" standard was satisfied where (1) the defendant was engaged in "widespread drug trafficking with a detailed organizational structure that would make him the target of a federal, rather than state investigation;" (2) "[a] local officer . . . testified that local authorities, from the outset, intended to investigate the case as a drug conspiracy and turn it over to the federal authorities;" (3) the defendant "was ultimately charged with a federal offense for violating drug laws;" (4) "two months before the murder, an informant contacted the" Drug Enforcement Administration "to report [the defendant's] drug activity," although the Drug Enforcement Administration did not commence an investigation at that time; and (5) a Drug Enforcement Administration agent "testified that if the victim wanted to offer further information about [the defendant's] drug activity, she would not have been turned away");

20

*cf. Aguero v. United States*, 580 F. App'x 748, 752 (11th Cir. 2014) (applying the *Fowler* "reasonable likelihood" standard to the habeas petitioner's conviction under 18 U.S.C. § 1512(b)(3) and finding that there was "ample" evidence satisfying this standard where "the evidence at trial showed" that there was "a working relationship between the" City of Miami Police Department "and the federal government, that a massive investigation results each time a police-related shooting occurs, and that standard practice existed of forwarding information from questionable shootings to the FBI"). Accordingly, the Court finds that the federal-nexus requirement of Section 1512(a)(1)(C) is satisfied in this matter.

For the foregoing reasons, the Court finds that each of the requirements of an offense under 18 U.S.C. §§ 1512(a)(1)(C) are satisfied in this case. The Court therefore finds that there is a factual basis for Defendant's guilty plea to this offense.

## B.   Punishment Provisions Under 18 U.S.C. §§ 1512(a)(3)(A) and 1111

Defendant also pled guilty to a violation of 18 U.S.C. § 1512(a)(3)(A). This Section provides a cross-reference to the pertinent punishment provision for the substantive offense under Section 1512(a)(1)(C) and states, in pertinent part, that "[t]he punishment for an offense under this subsection is . . . in the case of a killing, the punishment provided in section[] 1111."[9] 18 U.S.C. § 1512(a)(3)(A). Section 1111 is the federal murder statute and provides the following relevant language:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by . . . any . . . kind of willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree.

---

[9] In addition to a cross-reference to the murder statute under 18 U.S.C. § 1111, Section 1512(a)(3)(A) also provides a cross-reference to the manslaughter statute under 18 U.S.C. § 1112. *See* 18 U.S.C. § 1512(a)(3)(A). The allegations in the count to which Defendant pled guilty only pertain to murder, (*see* ECF No. 10 at 4), so the latter cross-reference to the manslaughter statute under Section 1112 is not at issue in this case.

. . .

>Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life . . . .

18 U.S.C. § 1111(a) & (b). Under Section 1111(a), "murder is the unlawful killing of a human being with malice aforethought, and first degree murder requires that the murder is willful, deliberate, malicious and premeditated."[10] *United States v. Mann*, 241 F. App'x 165, 167 (4th Cir. 2007); *see also United States v. Gray*, 253 F. App'x 321, 323 (4th Cir. 2007) ("First-degree murder, as defined by federal law, includes any killing that is either willful, deliberate, malicious, and premeditated or committed in the perpetration of an enumerated felony." (citing 18 U.S.C. § 1111(a))); *cf. United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003) ("[F]irst-degree premeditated murder . . . requires a showing of premeditation in addition to proof of malice."); *United States v. Silvia*, 881 F.2d 1070, at *4 (4th Cir. 1989) ("To prove first degree murder under 18 U.S.C. § 1111, . . . the prosecution ha[s] to establish (1) the unlawful killing of a human being, (2) malice aforethought, and (3) premeditation (or one of the other elevating factors in the statute)."). The requirement of a "killing" is satisfied in this case, as Defendant has repeatedly admitted that he killed Basham. (*See, e.g.*, ECF No. 55 at 2; ECF No. 63, Ex. A ¶¶ 4–8.) Additionally, there is no indication in the record that Defendant had a legal justification or excuse for killing Basham, so the "unlawful" requirement of this statute is similarly satisfied here.[11] *See*

---

[10] Certain model jury instructions include a requirement—which is also present in the statute—that the killing must occur "within . . . the territorial jurisdiction of the United States." *See* Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 45:03 (6th ed.). As the murder statute is only employed in the current case to ascertain the punishment for the substantive offense under 18 U.S.C. § 1512(a)(1)(C), this jurisdictional requirement is not at issue in the instant analysis. *See, e.g.*, *United States v. Peltier*, 446 F.3d 911, 914 (8th Cir. 2006) (addressing an analogous penalty cross-reference provision under 18 U.S.C. § 1114 and finding that the cross-reference only incorporates the punishment provisions under Section 1111(b) and not that statute's jurisdictional requirement); *United States v. Adams*, 581 F.2d 193, 200 (9th Cir. 1978) (same); *United States v. Nance*, No. 7:92CR00135, 2013 WL 594230, at *4–5 (W.D. Va. Feb. 15, 2013) (citations omitted) (same).

[11] A "malicious" killing—as opposed to a killing committed with "malice aforethought"—is a separate requirement

22

Leonard B. Sand et al., *Modern Federal Jury Instructions* § 41-3 (2014) ("An act is done unlawfully if it was done without justification or excuse."). The Court next turns to the remaining requirements of first-degree murder under Section 1111(a).

1.  Malice Aforethought

The next requirement for first-degree murder under Section 1111(a) is that Defendant committed the unlawful killing with malice aforethought. *See, e.g.*, *Mann*, 241 F. App'x at 167. "Malice is the state of mind that would cause a person to act without regard to the life of another." Leonard B. Sand et al., *Modern Federal Jury Instructions* § 41-4 (2014). "To prove malice, the Government does not have to show an intent to kill or injure." *Williams*, 342 F.3d at 356 (citing *United States v. Fleming*, 739 F.2d 945, 947 (4th Cir. 1984)). "Rather, malice aforethought 'may be established by evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that [the] defendant was aware of a serious risk of death or serious bodily harm.'" *Id.* (quoting *Fleming*, 739 F.2d at 947–48). *See generally Reckless*, Black's Law Dictionary (10th ed. 2014) (defining the term "reckless" as, in pertinent part, "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk"); *Wanton*, Black's Law Dictionary (10th ed. 2014) (defining the term

---

under Section 1111(a). *See, e.g.*, *United States v. Mann*, 241 F. App'x 165, 167 (4th Cir. 2007). "[M]alice requires committing the wrongful act without justification, excuse, or mitigation." *United States v. Serawop*, 410 F.3d 656, 664 (10th Cir. 2005); *cf. Patterson v. New York*, 432 U.S. 197, 215–16 (1977) (describing "malice" for purposes of a state murder statute as a "lack of provocation"). The Court notes that this requirement is largely redundant with the requirement of an "unlawful" killing. *Compare* Leonard B. Sand et al., *Modern Federal Jury Instructions* § 41-3 (2014) ("An act is done unlawfully if it was done without justification or excuse."), *with Serawop*, 410 F.3d at 664 ("[M]alice requires committing the wrongful act without justification, excuse, or mitigation."). Nonetheless, to the extent that an "unlawful" and "malicious" killing are separate and distinct requirements under Section 1111(a), the Court finds that the latter is similarly satisfied in this case, as there is no indication in the record that Defendant had a legally valid provocation in killing Basham, or other form of justification or excuse for committing the killing.

23

"wanton" as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences"). "Malice aforethought . . . can be proven by circumstantial evidence." *United States v. Medina-Garcia*, 226 F. App'x 281, 286 (4th Cir. 2007).

The record in this case reflects that Defendant convinced Basham to meet him at a secluded area of train tracks on the West Side of Charleston on July 12, 2014. (ECF No. 63, Ex. A ¶ 4.) Defendant provided a statement to Charleston Police Department detectives that, at this meeting, he displayed a firearm and Basham pled for her life. (PSR ¶ 47.) Basham then attempted to flee and Defendant shot her in the back. (*Id.*) At this point, Basham fell to the ground, requested that Defendant call an ambulance, and again pled for her life. (*Id.*) Defendant then shot Basham two more times, including once at close range into Basham's face. (*Id.*) The medical examiner report confirms that Basham sustained three gunshot wounds—one to her right cheek, one to her left chest, and one to her right anteroinferior chest. (*Id.* ¶ 33.)

Defendant's conduct in repeatedly shooting Basham—including once at close range into Basham's face and after she pled for her life—is clearly, at a minimum, reckless, wanton and a gross deviation from a reasonable standard of care. *See, e.g*, *Medina-Garcia*, 226 F. App'x at 286–87 (finding that "the Government presented sufficient evidence for a reasonable jury to find malice aforethought" where the jury could conclude from the evidence that the defendant "fired three shots at" the victim and, "[w]ith respect to two of the shots," the defendant "placed the gun within a quarter inch of [the victim's] chest and abdomen and pulled the trigger"). The Court therefore finds that the malice aforethought requirement of first-degree murder under Section 1111(a) is met in this case.

    2.    <u>Willful and Deliberate</u>

The next requirements of first-degree murder are that Defendant acted willfully and deliberately. *See, e.g.*, *Mann*, 241 F. App'x at 167. The term "willfully" means "deliberately and intentionally, as contrasted with being made accidentally, carelessly or unintentional."[12] *United*

---

[12] The Court notes that the meaning of the term "willfully" is heavily debated in the context of other statutes and that courts have developed different interpretations of how this term should be defined in the criminal context. *See, e.g.*, *United States v. Kay*, 513 F.3d 432, 447–48 (5th Cir. 2007) (discussing the "[t]hree levels of interpretation" courts have employed regarding "[t]he definition of 'willful' in the criminal context"). In *United States v. Danielczyk*, the court provided the following useful summary of the three "willfully" standards employed by courts in the criminal context:

> First, there is the [heightened] standard, which requires that the defendant know that he is violating an actual law. This standard applies "where the obscurity or complexity" of a criminal statute "may prevent individuals from realizing that seemingly innocent acts are, in fact, criminal," and thus willfulness requires the defendant to have known that he was violating a specific law. Second, the *Bryan* standard simply requires that the defendant possess "knowledge of the conduct's general unlawfulness." Third, the baseline standard simply requires that the defendant know what he is doing, regardless of his awareness of the law, and it applies where conduct by its nature could not be participated in innocently.

917 F. Supp. 2d 573, 576–77 (E.D. Va. 2013) (quoting *United States v. George*, 386 F.3d 383, 390–92 (2d Cir. 2004)). In this case, the Court finds that premeditated murder under Section 1111(a) implicates the baseline "willfully" standard because this "conduct by its nature could not be participated in innocently." *Id.* (citation omitted); *see, e.g.*, *George*, 386 F.3d at 395 ("[B]ecause no conceivable meritorious reason exists for [the conduct], conviction under [the statute] does not require a finding that the defendant acted with an awareness of the generally unlawful nature of his or her conduct, an improper purpose, or an 'evil-meaning mind' as required in *Bryan*."). In its order entered on March 7, 2016, the Court directed "where the parties to state in their briefing whether they object to the Court utilizing the definition of 'willfully' described by the Fourth Circuit in *United States v. Hassouneh*," which provides a baseline standard for "willfully." (ECF No. 54 at 3.) The parties stated that they do not object to the Court utilizing this definition of the term "willfully." (ECF No. 55 at 4.) The Court shall therefore employ this definition of the term "willfully" for purposes of the instant analysis.

Nonetheless, the Court notes that the Fourth Circuit has employed the intermediate willfulness standard in the context of statutes other than the statute at issue here. *See, e.g.*, *United States v. Bishop*, 740 F.3d 927, 932–35 (4th Cir. 2014) (the Arms Export Control Act); *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 82–86 (4th Cir. 2009) (the Gun Control Act); *RSM, Inc. v. Herbert*, 466 F.3d 316, 320–23 (4th Cir. 2006) (same); *United States v. Scott*, 188 F. App'x 213, 216 (4th Cir. 2006) (willfully injuring or committing depredation against United States property under 18 U.S.C. § 1361); *United States v. Bursey*, 416 F.3d 301, 308–09 (4th Cir. 2005) (willfully and knowingly entering and remaining in a restricted area where the President was temporarily visiting under 18 U.S.C. § 1752(a)(1)(ii)). Given the Fourth Circuit's use of the intermediate standard in other contexts and courts' varied interpretations of the "willfully" *mens rea* requirement, the Court finds that it is appropriate to also address whether Defendant's conduct meets the intermediate standard for this *mens rea* requirement.

In *Bryan v. United States*, the Supreme Court provided this intermediate standard and stated that, "[a]s a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'" 524 U.S. 184, 191 (1998); *see also Screws v. United States*, 325 U.S. 91, 101 (1945) (noting that "'willful' is a word of many meanings" and "its construction [is] often . . . influenced by its context," but "when used in a criminal statute, it generally means an act done with a bad purpose" (citations omitted)); *United States v. Gilbert*, 430 F.3d 215, 219 (4th Cir. 2005) (stating that the "mens rea of willfulness . . . generally requires a bad purpose" (citation omitted)); *United States v. Wilson*, 133 F.3d 251, 262 (4th Cir. 1997) ("'[W]]illful' generally connotes a conscious performance of bad acts *with an appreciation of their illegality* . . . ." (citation omitted)). "In other words, in order to establish a 'willful'

*States v. Hassouneh*, 199 F.3d 175, 183 (4th Cir. 2000) (finding that this definition of the term "willfully" in jury instructions "was adequate"); *cf. United States v. Jones*, 735 F.2d 785, 789 (4th Cir. 1984) (noting that the Supreme Court has "described willful conduct as 'that which is intentional, or knowing, or voluntary, as distinguished from accidental, and that it is employed to characterize conduct marked by careless disregard whether or not one has the right so to act'" (quoting *United States v. Ill. Cent. R.R.*, 303 U.S. 239, 242–43 (1938))). "To act 'deliberately' means to act intentionally; that is, knowingly and voluntarily and not because of mistake or accident." Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 166:32 (6th ed.).

In this case, Defendant's killing of Basham was willful and deliberate. Defendant provided a statement to Charleston Police Department detectives that, after luring Basham to a meeting and confirming that she was the confidential informant, he knew he was going to kill her. (PSR ¶ 46.) Defendant then shot Basham in her back while she attempted to flee, and twice more after she fell to the ground and pled for her life. (*Id.* ¶ 47; *cf. id.* ¶ 33 (providing that the autopsy and examination

---

violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *Bryan*, 524 U.S. at 191–92 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)); *see also id.* at 198–99 ("[W]hile disregard of a known legal obligation is certainly sufficient to establish a willful violation, it is not necessary . . . .").

The Court finds that this intermediate standard is satisfied in the present matter for two reasons. First, at the June 13, 2016 hearing in this case, Defendant acknowledged that he knew killing Basham was unlawful at the time of the murder. As such, there is direct evidence in the record that Defendant held the requisite *mens rea* to satisfy the *Bryan* intermediate standard.

Second, circumstantial evidence leads to the valid inference that Defendant knew this conduct was unlawful. In particular, following the murder, Defendant "went to a house . . . where he cleaned himself, disposed of his clothing, and wiped down the front door of the house." (ECF No. 50, Ex. A ¶ 5.) Additionally, Defendant then evaded police for five days until July 17, 2014, despite repeatedly contacting police regarding their search for him. (*See* PSR ¶¶ 38–41.) The Court finds that this evidence of Defendant's post-killing acts to hide his involvement in the killing and evade law enforcement constitute sufficient circumstantial evidence from which the Court may infer that Defendant knew his conduct in killing Basham was unlawful. *See, e.g., Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." (citation omitted)); *United States v. Diamond*, 788 F.2d 1025, 1030 (4th Cir. 1986) (stating that "direct evidence" of the requisite *mens rea* "is of course seldom possible and never a requisite to finding the necessary culpability of mind beyond a reasonable doubt"). For these reasons, the Court alternatively finds that Defendant acted willfully in killing Basham under the *Bryan* intermediate standard of this *mens rea* requirement.

of Basham "revealed that . . . Basham had sustained gunshot wounds to the right cheek, the left chest, and the right anteroinferior chest").) Further, Defendant stipulated that he "carried out the murder with the intent both to retaliate against Basham for her cooperation with police and to prevent her from providing additional evidence or testimony against him related to the drug trafficking investigation." (ECF No. 63, Ex. A ¶ 7; *see also id.* ¶ 8 ("[Defendant] carried out the murder of Basham with the intent to prevent Basham from communicating with federal law enforcement or a judge of the United States . . . .").)

The Court finds that these facts establish that Defendant knowingly, voluntarily, and intentionally murdered Basham. The Court therefore also finds that the willful and deliberate requirements of Section 1111(a) are met in this case.

### 3.   Premeditation

The final requirement of first-degree murder under Section 1111(a) is premeditation. *See, e.g.*, *United States v. Mann*, 241 F. App'x 165, 167 (4th Cir. 2007). "An act is done with premeditation if it is done upon planning or deliberation." Leonard B. Sand et al., *Modern Federal Jury Instructions* § 41-5 (2014). "'Premeditation' is a fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act." *United States v. Abdullah*, No. 06–4970, 2007 WL 2046801, at *4 (4th Cir. July 13, 2007) (quoting 40 Am. Jur. 2d *Homicide* § 44 (2007)). "[N]o particular period of time for reflection is essential to a finding of premeditation and deliberation." *United States v. Rogers*, 457 F. App'x 268, 270 (4th Cir. 2011) (quoting *United States v. Sinclair*, 301 F. App'x 251, 255 (4th Cir. 2008)). "While the

amount of time for reflection may vary, it is the fact of deliberation, of second thought that is important." *Id.* (quoting *Sinclair*, 301 F. App'x at 255).

In the present matter, Defendant provided a statement to Charleston Police Department detectives that—after an MDENT detective informed Defendant, following the search of his residence, that officers had conducted two controlled buys from him—Defendant knew he "was gonna kill." (PSR ¶ 44.) Defendant also stated that, on the night of the killing, Defendant "lure[d] . . . Basham to a dark area near the railroad tracks to confront her about being a confidential informant." (*Id.* ¶ 46.) After Defendant confirmed during the meeting that "Basham was responsible for 'setting him up,'" Defendant stated that he "knew he was going to kill her." (*Id.*) Defendant then displayed a firearm and shot Basham in the back as she attempted to flee, as well as two more times—including once into Basham's face at close range—after she fell to the ground and pled for her life. (*Id.* ¶ 47.)

These facts establish that Defendant had a fully formed conscious purpose to kill Basham at some point prior to him firing the first shot into Basham's back, and certainly no later than when Defendant fired two additional shots at Basham after she fell to the ground. The Court therefore finds that Defendant's killing of Basham was premeditated.

In summary, the Court finds that Defendant unlawfully killed Basham with malice aforethought, and this murder was willful, deliberate, malicious, and premeditated. The Court therefore finds that all of the requirements for first-degree murder under Section 1111(a) are satisfied in this case. *See, e.g.*, *Mann*, 241 F. App'x at 167 (providing the requirements for first-degree murder under Section 1111(a)). Accordingly, the Court finds that there is a factual basis

for Defendant's plea to the penalty provision under 18 U.S.C. § 1512(a)(3)(A), which, in pertinent part, cross-references to the first-degree murder statute under 18 U.S.C. § 1111(a) & (b).

### IV.  Conclusion

For the foregoing reasons, the Court **FINDS** that there is a factual basis for Defendant's plea.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.


ENTER:       June 13, 2016


THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE